NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0160n.06

No. 24-5715

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

ROSCOE D. ECHOLS,

    Plaintiff-Appellant,

v.

KENTUCKY JUSTICE AND PUBLIC SAFETY
CABINET; KENTUCKY DEPARTMENT OF
JUVENILE JUSTICE; MIRANDA RODGERS
GRAY; CHRIS BRYANT; ED JEWELL,
CYNTHIA WATSON; LASHANA HARRIS,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)
)

**FILED**
Mar 24, 2025
KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF KENTUCKY

OPINION

Before: GIBBONS, LARSEN, and MURPHY, Circuit Judges.

LARSEN, Circuit Judge. The Kentucky Department of Juvenile Justice (the Department) hired Roscoe Echols as a Youth Worker in 2015. The Department terminated Echols' employment in 2020, after four instances in which Echols used excessive force against youths residing at one of the Department's facilities. Echols sued the Department and various other defendants, alleging race discrimination and retaliation. The district court granted summary judgment to defendants. Echols now appeals. We AFFIRM.

I.

Roscoe Echols, who is African American, began working for the Department in 2015 as a Youth Worker at the Green River Youth Development Center. Youth Workers are responsible for supervising and monitoring juveniles who are housed at the Development Center because they have committed crimes.

In June 2017, a juvenile alleged that Echols pushed him in the back. The Internal Investigations Branch (IIB), which is part of the Kentucky Justice and Public Safety Cabinet and separate from the Department, investigates such allegations. The IIB conducted an investigation and substantiated the claim that Echols had unjustifiably pushed the youth. During this investigation, others came forward complaining of a second incident in which Echols shoved a different youth in the back. The IIB also investigated and substantiated this allegation. Over the phone and via letter, Echols expressed disagreement with the outcomes of the investigations. Nonetheless, the Department Superintendent prepared two Major Corrective Action Requests (MCAR) regarding Echols, which were then submitted to the Department Commissioner. For these two incidents, the Department suspended Echols for one day without pay.

Thereafter, the IIB received a phone call alleging that Echols had used excessive force during a restraint, injuring a juvenile's arm. After an investigation, the IIB substantiated this allegation as well. The Superintendent prepared an MCAR, which was submitted to the Commissioner. Then, IIB conducted a fourth investigation after another incident in which Echols allegedly used excessive force to restrain a juvenile. The IIB once more substantiated the allegation, and the Superintendent prepared a fourth MCAR and sent it to the Commissioner.

Based on the four MCARs, the Department Deputy Commissioner recommended that Echols be dismissed. Lashana Harris, who is African American and was the Department Commissioner at the time, agreed with the recommendation and terminated Echols' employment in January 2020.

In 2021, Echols sued the Department and various other defendants, alleging race discrimination and retaliation. Defendants moved for summary judgment as to both claims. The

district court, adopting the magistrate judge's recommendation, granted the motion for summary judgment.[1]  Echols now appeals.

II.

We review the district court's summary judgment decision de novo.  *El-Khalil v. Oakwood Healthcare, Inc.*, 23 F.4th 633, 634 (6th Cir. 2022).  Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

*Race Discrimination.*  The district court didn't err by granting summary judgment to the Department on Echols' race-discrimination claim.  To make a Title VII race-discrimination claim, Echols must make a prima facie showing of discrimination,[2] which includes establishing that he

---

[1] The district court granted summary judgment in favor of three individual defendants (Miranda Rodgers Gray, Ed Jewell, and Cynthia Watson) on the ground that they could not be held personally liable for the alleged employment discrimination under Title VII.  Echols doesn't challenge this conclusion on appeal.  Two other defendants (Chris Bryant and Lashana Harris) were not part of the motion for summary judgment.  But the court later dismissed the claims against those defendants for Echols' failure to timely serve them since the beginning of the lawsuit over three years prior.  The dismissal of the claims against Bryant and Harris rendered the judgment final and appealable.  Echols doesn't challenge the dismissal of these two defendants.

[2] The district court analyzed the "similarly situated" issue as one of pretext.  The parties, however, analyze it as part of the prima facie case.  So in this instance we do too; though some courts have questioned whether that is appropriate once the employer has articulated a non-pretextual reason for the firing.  *See, e.g.*, *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008) (Kavanaugh, J.) ("[O]nce the employer asserts a legitimate, non-discriminatory reason, the question whether the employee actually made out a prima facie case is no longer relevant and thus disappears and drops out of the picture." (cleaned up)).  Adopting the parties' framing, Echols' claim cannot succeed.  While the burden of establishing a prima facie case of discrimination is not onerous, *see Cline v. Cath. Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000), Echols can't meet the burden here, where his only two relevant comparators received harsher punishment than he did.  And the same result would obtain in a pretext analysis.  *See Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 779–80 (6th Cir. 2016) (To use comparators to establish pretext, a plaintiff ordinarily must offer "evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff.").

"was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *Newman v. Fed. Exp. Corp.*, 266 F.3d 401, 406 (6th Cir. 2001). Here, Echols attempted to show that he was treated differently than other similarly situated non-protected employees. In the disciplinary context, "to be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

Echols offered a host of comparators to support his claim. But the district court concluded that each of them failed. Most didn't deal with the same supervisor (Harris), so they are not similarly situated. *See id.* Only two—David Wilkerson and Josh Bell—were supervised by Harris and are of a different race than Echols. But these two had incomparable conduct and discipline histories, and Echols was not treated worse. Echols' first two incidents resulted in a total of one-day's suspension; he was then terminated after the next two. By comparison, Bell received a three-day suspension for his first excessive force violation. Wilkerson received a five-day suspension for his first excessive force violation and was later terminated, not for using excessive force against a juvenile detainee, but for assaulting a coworker.

On appeal, Echols doesn't challenge the district court's conclusion that he was not treated differently than Wilkerson or Bell. Instead, he tries to expand the number of comparators by relying on a cat's paw theory, saying that IIB manager Ed Jewell is the relevant supervisor, not Harris. We doubt that Jewell, who is not even a Department employee, can be a "supervisor" for Title VII purposes. But, in any event, Echols did not advance this theory below, so he may not do so now. *Cf. Bose v. Bea*, 947 F.3d 983, 993 (6th Cir. 2020) (declining to consider plaintiff's

deliberate-indifference-to-retaliation theory where plaintiff pursued only a cat's paw theory below).

Echols also argues that he has presented sufficient evidence to show that his conduct didn't warrant his suspension or termination. We are inclined to disagree, but regardless, it wouldn't matter because Echols can't show that his comparators were treated better than him. Both Wilkerson and Bell received harsher punishment for their incidents than Echols. Showing that he should have received less or no punishment at all would not establish that he was treated differently than similarly situated non-protected employees. It therefore would not raise an inference of race discrimination.

The district court didn't err by dismissing Echols' race-discrimination claim.

*Retaliation.* The district court also didn't err by granting summary judgment to the Department on Echols' Title VII retaliation claim. For such a claim, Echols must show that "(1) he engaged in protected activity; (2) defendants knew he exercised his protected right; (3) defendants subsequently took an adverse employment action against him; and (4) his protected activity was the but-for cause of the adverse employment action." *Boshaw v. Midland Brewing Co.*, 32 F.4th 598, 605 (6th Cir. 2022) (citation omitted). Echols says that he engaged in protected activities when he sent a letter and made a phone call in 2017 protesting the results of the first two investigations. Even if these were protected activities, the district court, by adopting the magistrate's recommendation, found no causal connection between Echols' communications and his firing. The magistrate judge determined that there was no evidence that Harris knew about the 2017 communications, and that the significant passage of time between these communications and the decision to fire him could not support any inference of causation that might arise from temporal proximity. *See Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000) (knowledge of

protected activity "coupled with a closeness in time" may "create[] an inference of causation" (citation omitted)). Echols' briefing fails to grapple with the district court's reasons for finding no causal connection. This constitutes forfeiture. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997); *Castellon-Vogel v. Int'l Paper Co.*, 829 F. App'x 100, 102 (6th Cir. 2020). At best, he argues that Jewell, not Harris, was aware of his complaints. But, as discussed previously, Harris was Echols' supervisor, who made the decision to fire him. And any attempt to rely on a cat's paw theory was not presented below. Because there was no causal connection, the district court didn't err by dismissing Echols' retaliation claim.

* * *

We AFFIRM.